(52 South. 129.)

No. 18,039.

SHREVEPORT BRIDGE & TERMINAL CO. v. STATE BOARD OF APPRAISERS.

(March 28, 1910. Rehearing Denied April 25, 1910.)

*(Syllabus by the Court.)*

1. TAXATION (§ 231*) — EXEMPTIONS — TOLL BRIDGE.

A bridge, built and operated by an independent corporation established for that purpose, is not exempt from taxation as part of a railroad, under the amendment to the Constitution proposed by Act No. 16 of 1904, because used by certain railroad companies, which pay tolls for the running of their trains over it; the earning of such tolls being the sole business in which the corporation owning and operating the bridge is engaged.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 371–378; Dec. Dig. § 231.*]

2. APPEAL AND ERROR (§ 503*)—JURISDICTION —HOW SHOWN.

The appellate jurisdiction of this court, ratione materiæ, should appear on the face of the record, and the lack of such showing cannot be supplied by an ex parte affidavit, of which the opposing litigant has received no notice.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2310; Dec. Dig. § 503.*]

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Action by the Shreveport Bridge & Terminal Company against the State Board of Appraisers. Judgment for defendant, and plaintiff appeals. Affirmed.

Alexander & Wilkinson, for appellant. Walter Guion, Atty. Gen. (R. G. Pleasant, of counsel), for appellee.

### Statement of the Case.

MONROE, J. Plaintiff is a corporation established under the law of this state, the objects and purposes of which are declared in its charter to be:

"To build, equip, maintain and operate a bridge over and across Red river, at or near the city of Shreveport, within one mile from the upper or lower limits of said city, with all necessary yards, side tracks, switches, main tracks, approaches and appurtenances, and, generally, to do everything that may be necessary to properly operate the said bridge, yards, tracks and approaches thereto, with full power, also, to build, equip, maintain and operate, in connection therewith, such additional lines of railroad, with tracks, locomotives and equipments, as may, hereafter, be desired. The said bridge to be used as a railroad bridge for the passing, or crossing, of trains, locomotives and cars, together with all their passengers and freight, with the right, in addition thereto, to construct on said bridge a roadway for the passage of persons, vehicles and animals, etc., provided that same shall, at any time, hereafter, be deemed advisable, and the consent of the proper municipal authorities be obtained."

To carry out the purposes so declared, the company, between January 1, 1905, and say March 25, 1907, built a bridge, at a cost of $449,949.36, at the place and of the character mentioned (save that it is not yet adapted to the accommodation of persons, vehicles, etc.), for the use of which, it at present collects from two railroad companies, and has a contract under which it expects to collect from a third company, tolls to the amount, from each company, of $12,000 a year. The bridge was assessed for the year 1908 at $160,000, and, so far as the record shows, no complaint was made. For the year 1909 the company appears to have returned the bridge to the State Board of Appraisers as trackage, at a valuation of $2,880; but it was assessed at $160,000, as in 1908. If any complaint was made to the board, or effort to obtain reduction, it is not shown by the record. The object of the present suit is to have the property decreed exempt from taxation and the assessment annulled, or to have it decreed that the State Board of Appraisers is without authority to make the assessment, or to have the assessment reduced to $5,000. The grounds relied on for the obtention of the relief sought are stated in the petition substantially as follows:

(1) That the bridge is part of a railroad, and, having been begun and completed between January 1, 1905, and January 1, 1909, is exempt from taxation, under the amendment to the Constitution proposed by Act No. 16 of 1904 and adopted in November of that year.

(2) That, if it be not exempt as part of a railroad, the power to make assessments, vested in the State Board of Appraisers, does not extend to it.

(3) That if it be not exempt, and the State Board of Appraisers is authorized to assess it, the assessment, as made, is exorbitant, and in excess of that placed on other property similar in character.

Opinion.

The provisions of the Constitution upon which plaintiff relies read as follows:

"There shall be exempt from taxation, for a period of ten years from the date of its completion, any railroad, or part of railroad, that shall have been constructed and completed subsequently to January 1, 1905, and prior to January 1, 1909. This exemption shall include and apply to all the rights of way, roadbed, or sidings, rails and other superstructures upon such rights of way, and to all depots, station houses, buildings, erections and structures, appurtenant to such railroads, and the operation of the same, but shall not include the depots, warehouses, station houses, and other structures and appurtenances, nor the land upon which they are erected, at terminal points, and for which franchises have been granted and obtained, whether same remain the property of the present owner or owners or be transferred or assigned to any corporation or corporations, person or persons, whomsoever; and provided, further, that this exemption shall not apply to double tracks, sidings, switches, depots, or other improvements or betterments which may be constructed by railroads now in operation within the state, other than extensions, or new lines, constructed by such railroads."

The obvious purpose of this provision was to encourage the building of new railroads in this state and the extension of the lines of railroads already built; but the further purpose strictly to limit the exemption to such new railroads, or parts or extensions of roads, is made manifest by the specific exclusion therefrom, whether with respect to projected or existing roads, of "depots, warehouses, station houses and other structures, at terminal points, and for which franchises have been obtained and granted," and by the exclusion from such exemption of "double tracks, sidings, switches, depots, or other improvements or betterments which may be constructed by railroads now in operation within the state, other than the extensions or new lines constructed by such railroads."

If the bridge in question could be regarded as part of a railroad, the question which suggests itself is: Of what railroad is it a part? And the record furnishes no answer. It can hardly be a part of either of the roads, the names of which are mentioned in the peti-

tion, and by the witnesses, since they each pay $12,000 a year as tolls for running their trains over it, and neither corporations nor individuals pay for the privilege of using their own property. Upon the other hand, the record shows affirmatively that the bridge is the property ("in fee simple," the petition alleges) ·of the plaintiff, and that plaintiff is a corporation created for the purpose of building and operating a bridge, to be used for railroad and other purposes, and "in connection therewith, such lines of railroad, tracks, locomotives and equipments as may hereafter be desired." But for an independent company to construct a toll bridge and to furnish it with the equipment needed for the accommodation of its patrons does not identify the company with the business òf such patrons, or make the bridge a part of their respective outfits. The bridge remains a toll bridge, no matter who uses it, and is no more part of a railroad, because a railroad company, paying $12,000 a year for the privilege, runs its cars over it, than it will become an appurtenance of a cotton plantation, when, in the future, a cotton planter may haul his cotton over it in his wagons, though, if it belonged to the railroad company, or the planter, the case would be different. The case of State (Cent. R. Co., Prosecutors) v. Mutchler, Collector, 41 N. J. Law, 96, to which we are referred, is inapplicable.

The exemption was there claimed (on a bridge built by one railroad company and leased by it to another, and used by the latter as part of its line) under a statute which granted exemption "to all railroad corporations or companies occupying or using railroads in this state, whether as lessees or otherwise." And the court said:

"The state of the case agreed on shows that the bridge was used by the prosecutor as a railroad bridge, and for no other purpose. It was part of the prosecutor's railroad. * * * It was also held and used by the prosecutor, as lessee, within the meaning of the act of 1873."

In the instant case the bridge is shown not to be a part of any railroad, but to be the property of a corporation which was organized to build and operate it, and which charges certain railroad companies tolls for running their trains over it; that being the only business in which it is engaged.

As to the other points presented, there is nothing in the record to show that this court is vested with jurisdiction ratione materiæ; the state not having appeared to have received notice of the filing in this court of the affidavit of plaintiff's counsel on the subject of the amount of the tax involved.

Judgment affirmed.